```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MELISSA L. SHAW, et al., | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | |
| v. | Civil Action<br>No. 11-276 (JBS/JS) |
| SCOTT OBERMEIER, et al., | |
| Defendants. | **MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

This matter comes before the Court on two motions for summary judgment by Defendants Scott Obermeier, Richard Worst, Mark Pickard, Mario Straccialini, Harry Earle, and the Township of Gloucester [Docket Item 132] and by Defendant James W. Shriver [Docket Item 137.] This action arises from two traffic stops in Gloucester Township in the early morning of November 10, 2010 which followed observations by the local police of suspected drug activity involving pro se Plaintiffs Melissa Shaw and Salahuddin Smart. Prior to the traffic stops, detectives conducting surveillance in the area observed Plaintiff Smart in the parking lot of a Howard Johnson Motel entering a vehicle operated by Plaintiff Shaw and returning to his vehicle, which was later revealed to be a vehicle rented by Plaintiff Shaw. Ultimately, both Plaintiff Smart and his passenger, Melissa Librojo, were charged with possession of a controlled substance.

Plaintiff Smart now asserts claims under 42 U.S.C. § 1983 for alleged violations of his Fourth Amendment rights stemming from the traffic stop and subsequent criminal prosecution.

For the following reasons, the Court will grant Defendants' motions and dismiss Plaintiff Smart's case in its entirety with prejudice.

1. The factual record for purposes of the pending motions are straightforward and undisputed.[1] On November 13, 2010, detectives from the Gloucester Township Police Department ("GTPD") Defendants Scott Obermeier, Mario Straccialini, and Detective Sargent James Shriver were conducting surveillance of the Howard Johnson Motel in Gloucester Township, an area known for criminal activity. (Obermeier et al. Statement of Material Facts ("SMF") [Docket Item 133] ¶¶ 10-11.) The detectives observed a car driven by Plaintiff Smart circle the Howard Johnson's parking lot repeatedly before ultimately parking next to a second vehicle, a white SUV driven by Plaintiff Shaw, which pulled to the rear of the lot. (Id. ¶¶ 12-13, 19-21.) The detectives watched as Plaintiff Smart entered the rear passenger compartment of the white SUV, returned to his vehicle, then entered the white SUV a second time before returning to his

---

[1] Because Plaintiff has filed no opposition, the Court deems the facts set forth by Defendants undisputed for purposes of the pending summary judgment motion. See L. Civ. R. 56.1(a).

vehicle and exiting the parking lot. (Id. ¶¶ 22-23.) The detectives positively identified Smart, who was known to them due to previous encounters and arrests for criminal activity. (Id. ¶¶ 27-28.) Detectives believed Plaintiff Smart's license was suspended and called for his vehicle to be stopped. (Id. ¶¶ 29, 31.)

    2.   Defendant Pickard, another Officer with the GTPD, was the first patrol unit available to stop Plaintiff Smart's vehicle. (Id. ¶ 31.) During the stop, Smart and his passenger were ordered to exit the vehicle so that a canine perimeter sniff search could be conducted. (Id. ¶ 35.) Upon being advised that a female officer was going to conduct a pat down of her person, the passenger, Melissa Librojo, told officers that she placed a bag down the front of her pants. (Id. ¶¶ 36-37.) She was then found to be in possession of two plastic bags containing small pills. (Id. ¶ 37.) Ms. Librojo told Defendant Obermeier that the bag of pills had been in the center console of the vehicle before they were stopped, and that she had hidden them in her pants to avoid having them seen by police. (Id. ¶ 38.) She told Defendant Obermeier that the drugs did not belong to her. (Id. ¶ 40-41.) Both Smart and Librojo were charged with possession of a controlled substance. (Id. ¶¶ 42, 55.)

    3.   Plaintiff Smart was taken to the Gloucester Township Police Department, where he was placed in cell while evidence

was being processed. (Id. ¶¶ 43, 45.) Surveillance video shows Plaintiff Smart attempting to flush an unknown object down the cell toilet and placing items – including his mattress and various articles of clothing – over the camera in the cell. (Id. ¶¶ 46, 48-49.) Each time Plaintiff Smart used an item to cover the camera, GTPD officers removed it from the cell. (Id. ¶ 50.) Defendants Obermeier and Shriver considered this conduct "violent" and placed Plaintiff Smart in a physical restraint chair so that he would not harm himself. (Id. ¶¶ 51-53.)

    4.    Plaintiffs Shaw and Smart commenced separate actions on January 18, 2011 and February 9, 2011 respectively. On March 15, 2011, Shaw and Smart filed an Amended Complaint in Shaw v. Obermier, Civil No. 11-276 (JBS/JS). [Docket Item 6.] On that same date, Plaintiffs filed an unopposed motion to consolidate the later-filed action Smart v. Pickard, Civil No. 11-743 (RBK/AMD) with Shaw v. Obermier, Civil No. 11-276 (JBS/JS), which the Court granted on April 6, 2011. [Docket Item 9.] Plaintiff Shaw's suit was ultimately dismissed in its entirety for lack of prosecution. [Docket Items 112 & 113.] Discovery as to Plaintiff Smart's remaining claims has now closed. Pending before the Court are motions for summary judgment filed by Defendants Scott Obermeier, Richard Worst, Mark Pickard, Mario Straccialini, Harry Earle, and the Township of Gloucester

[Docket Item 132] and by Defendant James W. Shriver [Docket Item 137.]

5. Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the Court may grant summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court finds that based on the undisputed facts in the record, summary judgment is warranted for all Defendants.

6. To state a claim for relief under § 1983, a plaintiff must allege: 1) the violation of a right secured by the Constitution or laws of the United States and 2) that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255–56 (3d Cir. 1994). See also Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). Plaintiff Smart alleges that the individual Defendants, all GTPD officers, violated his Fourth Amendment rights by way of a traffic stop, canine sniff search of his vehicle, arrest, strip search, and malicious prosecution, and

5

alleges that Gloucester Township and the Chief of Police are liable for inadequate training of police officers, failing to have clear policies and procedures, and having a custom of allowing officers "unfettered discretion" to conduct canine drug detection searches.

7. Plaintiff Smart has not established a Fourth Amendment violation on account of the traffic stop. The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979); see also United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006). Consistent with the Fourth Amendment, an officer may conduct a brief investigatory stop when he has reasonable, articulable, and individualized suspicion that criminal activity is afoot. United States v. Lowe, 791 F.3d 424, 434 (3d Cir. 2015). Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000).

8. In this case, the officers on the scene – according to Plaintiff Smart, it appears Defendants Obermeier, Straccialini, Shriver, Worst, and Pickard – had reasonable suspicion to stop

Plaintiff's car. Plaintiff was observed in an area "known for criminal activity" engaged in activity in the Howard Johnson parking lot which three different officers described as "suspicious."(SMF Ex. B at 4, 11; Ex. C at 52:2-5; Ex. D. at 33:9-34:8; Ex. F at 4:22-5:17.) Because Defendant Straccialini was able to identify Mr. Smart in the parking lot, the officers on the scene were able to learn that he did not have a valid driver's license. (SMF Ex. D at 24:22-25:20, 30:6-21.) The officers therefore observed him in violation of one of the traffic laws of New Jersey, driving without a license, when he exited the Howard Johnson parking lot. (SMF Ex. B at 4, 11.) "A police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation." United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004) (citing Pennsylvania v. Mimms, 424 U.S. 106, 109 (1977)). Although Plaintiff asserts that he was not "operating the vehicle in excess of the speeding limit" (Am. Compl. Count 1), this traffic violation of driving without a license sufficed to give Officer Pickard reason to stop Plaintiff Smart's vehicle. Accordingly, the Court will grant Defendants' motions for summary judgment as to Plaintiff Smart's claims arising from the traffic stop.

9.   Plaintiff Smart has also not established a Fourth Amendment violation on account of the canine sniff search of his vehicle. Plaintiff asserts that "the k-9 sniff was intrusive

7

enough to amount to a search" (Am. Compl. Count 25), but the Supreme Court has held that "the use of a well-trained narcotics detection dog – one that does not expose noncontraband items that otherwise would remain hidden from public view – during a lawful traffic stop, generally does not implicate legitimate privacy interests." Illinois v. Caballes, 543 U.S. 405, 409 (2005) (internal citations omitted). Because the Court has already found that Plaintiff Smart's traffic stop was lawful, and because there is no evidence showing that any noncontraband items were revealed by Officer Pickard's dog (SMF Ex. B at 4, 11), nothing unconstitutional occurred on account of the canine search. The Court will grant Defendants' motions for summary judgment as to Plaintiff Smart's claims arising from the canine sniff search.

10.  Plaintiff Smart has also not established a Fourth Amendment violation for false arrest. To state a claim for false arrest, a plaintiff must show: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012). An officer has probable cause to arrest when there are "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (internal citations omitted). In this case, Defendant Obermeier filed criminal

charges against Plaintiff Smart for violation of N.J.S.A. § 2C:35:10(a)(1), which criminalizes the possession or constructive possession of controlled dangerous substances. The New Jersey Supreme Court defines constructive possession as a situation where, although a defendant lacks physical control over an item, "the circumstances permit a reasonable inference that the defendant has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time." State v. Spivey, 844 A.2d 512, 516 (N.J. 2004). Defendant Obermeier had probable cause to believe that Plaintiff Smart had constructive possession of the pills handed over by Ms. Librojo, the passenger in his car: Ms. Librojo told Defendant Obermeier that she had a bag of pills concealed in her pants, that the drugs had been in the center console of Plaintiff Smart's car, that she did not want the police to see the drugs in the console, and that the drugs did not belong to her. (SMF Ex. B at 4, 11.) Defendant Obermeier was entitled to rely on Ms. Librojo's statement in his determination that probable cause existed to find that Plaintiff Smart had constructive possession of the drugs without investigating them further. See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 n. 8 (3d Cir. 2000) (officer "was not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed."). Smart was the

9

driver, seated next to the console containing the drugs, and his passenger said the drugs were not hers; these circumstances were known to the arresting officer and they constituted probable cause for his arrest. No reasonable juror could find that probable cause was lacking. Accordingly, because there was probable cause to arrest Plaintiff Smart for possession of a controlled dangerous substance, the Court will grant Defendants' motions for summary judgment as to Plaintiff Smart's false arrest claim.

11.  Plaintiff Smart has also not established a Fourth Amendment violation for false imprisonment based on his incarceration in the Camden County Correctional Facility. To state a claim for false imprisonment, a plaintiff must show: "(1) that [he] was detained; and (2) that the detention was unlawful." James, 700 F.3d at 682-83. Plaintiff Smart may have had a viable false imprisonment claim if he had been arrested without probable cause, Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995), but his detention was lawful because he was held, first at the Gloucester Township Police Department and then at the Camden County Correctional Facility, pursuant to his legitimate criminal charges for possession of a controlled dangerous substance. Accordingly, the Court will grant Defendants' motion for summary judgment as to Plaintiff Smart's false imprisonment claim.

10

12. Plaintiff Smart has also not established a Fourth Amendment violation on account of the alleged "strip search" in his jail cell at the Gloucester Township Police Department. Plaintiff Smart asserts that Defendant Obermeier "force[d] plaintiff Smart to acts that constituted a strip search outside the holding cell when he required removal of clothing" (Am. Compl. Count 28), but the evidence shows that Plaintiff Smart removed his clothing of his own accord to obscure the surveillance camera in his cell. (See SMF Ex. H.) Officers confiscated each item of clothing as it was used to block the camera, on the grounds that Plaintiff Smart's behavior was "violent" and could "cause damage or cause harm" to himself. (SMF Ex. B at 5, 12-13; Ex. C. at 93:9-22.) This does not implicate any reasonable expectation of privacy protected by the Fourth Amendment. Accordingly, the Court will grant Defendants' motion for summary judgment as to Plaintiff Smart's Fourth Amendment claim arising out of his alleged strip search.

13. Plaintiff Smart has also not established a Fourth Amendment violation for malicious prosecution. To state a claim for malicious prosecution, a plaintiff must show "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff

11

to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005). Because, as discussed above, the charges against Plaintiff Smart for possession of a controlled dangerous substance were based upon probable cause, Plaintiff cannot prevail on a claim for malicious prosecution on account of those charges. Therefore the Court will grant Defendants' motion summary judgment on Plaintiff Smart's malicious prosecution claim.

14. Nor can Plaintiff maintain claims against Defendants Obermeier, Straccialini, Worst, and Shriver for "bystander liability" for not intervening to prevent the allegedly unconstitutional traffic stop, canine search, arrest, and strip search. It is black-letter law that state actors may be liable in a § 1983 claim only for their own unconstitutional conduct. Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Indeed, as held above, no unconstitutional conduct occurred in the traffic stop, canine search, arrest and strip search, so there can be no bystander liability for failing to prevent nonexistent misconduct. Police officers only have a duty to intervene "when other officers use excessive force." Smith v. Mensinger, 293 F.3d 641, 655 (3d Cir. 2002). Because Plaintiff has not

presented facts showing that these officers were personally involved in the conduct of which he complains, and because he has not brought an excessive force claim, the Court will grant Defendants' motions for summary judgment as to all claims of bystander liability.[2]

15.  Plaintiff also cannot maintain municipal liability claims against Gloucester Township or Police Chief Earle.[3] Plaintiff Smart brings claims against the Township and Defendant Earle for inadequate training of GTPD officers (Am. Compl. Counts 21 & 22), for having a custom of allowing officers "unfettered discretion" to conduct canine drug detection searches (Counts 26 & 27), and for failure to have a clear policies and procedures regarding "removal of arrestees clothing which amounts to a strip search" (Counts 29 & 30).

16.  It is well-established that "municipal liability under § 1983 attaches where-- and only where-- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in

---

[2] Having found no constitutional violations in this case, the Court will not reach the Individual Defendants' arguments about qualified immunity.

[3] A claim against a public officer in his official capacity is treated as a claim against the governmental entity of which he is an officer. Brandon v. Holt, 469 U.S. 464, 471-72 (1985). Thus, the same Monell analysis applies to the claims against both the Township and Defendant Earle.

question." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). Whether a policy or a custom, "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997). Thus, for a plaintiff to sufficiently demonstrate municipal liability for an unconstitutional custom under § 1983, he must present facts to support a finding that execution of a specific policy or custom, or the directive of the municipality's final decision maker, caused the alleged harm. To maintain a claim for a failure to supervise or discipline its police officers, a plaintiff must show that the municipality was deliberately indifferent to the constitutional rights of its inhabitants. Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995).

17.  There is no evidence in the record describing a specific policy or custom which deprived Plaintiff of his constitutional rights, or that the municipality – and not just individual officers – was the "moving force" behind any such policy or custom. Nor is there any evidence to find that the Gloucester Township was deliberately indifferent to the constitutional rights of its inhabitants. Indeed, Plaintiff has not shown that any of his constitutional rights were in fact violated. Therefore, the Court will grant Defendants' motion for

14

summary judgment on Plaintiff's claims against Gloucester Township and Defendant Earle in his official capacity.

18. Finally, the Amended Complaint is sometimes unclear as to whether the allegations against the Individual Defendants refer to claims brought by Plaintiff Shaw or claims brought by Plaintiff Smart. To the extent that any of Plaintiff Smart's claims implicate conduct directed at Plaintiff Shaw, the Court will grant Defendants' motions for summary judgment: Plaintiff Shaw does not have standing to seek § 1983 relief for the violation of someone else's constitutional rights, and those claims have already been dismissed with prejudice. [See Docket Items 112 & 113.]

19. An accompanying order will be entered granting Defendants' motions in their entirety.

| | |
|---|---|
| **June 2, 2016** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE<br>Chief U.S. District Judge |